# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-296** |
| **ADAIR JACKSON** | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Meghan A. Farley, Special Assistant United States Attorney for the District, hereby moves this Honorable Court to detain the defendant, Adair Jackson, prior to trial because there are no conditions or combination of conditions that can reasonably assure the safety of the community or mitigate the risk of flight.

The defendant, Adair Jackson, is a dangerous gun trafficker who has been committing firearms and narcotics crimes on and off for the past 28 years. Today he is before this Court charged by indictment with possession of a firearm by a felon, in violation of 18 U.S.C. 922(g)(1), and firearms trafficking, 18 U.S.C. 933(a)(2). He appears today with a lengthy criminal record that includes eight firearm and drug-related convictions (including attempted murder for the shooting of a pregnant woman), one juvenile conviction, and at least four probation violations. And notably, the evidence of the crimes underlying the indictment (three firearms) were recovered by detectives in his bedroom.

The defendant's criminal record provides insight into his behavior, both in terms of his disregard for the safety of the community, and his disregard for restrictions placed upon him by the law or courts. He has committed three drug trafficking crimes, two attempted murders using a

firearm, and illegal firearm possession. And now, after serving 12 years in prison for attempted murder, he has returned to his criminal ways and is now trafficking and possessing firearms illegally. As a person who has directly contributed to the violence in Philadelphia, the defendant knows the damage that firearms cause to the community, and yet he traffics firearms. His criminal record and conduct underlying the indictment demonstrate to this court that he is a danger to the community.

His criminal record also shows this court that he does not respect or comply with conditions imposed by the law or courts. He was first found responsible for a crime at 16 years old (simple assault, reckless endangering, theft by unlawful taking). After that, he was convicted of eight additional crimes. Notably, he managed to amass eight adult convictions in 28 years despite being incarcerated for attempted murder for 12 years. And his record shows that he violated a probation sentence at least four times. This record makes clear that he is unlikely to abide by any conditions imposed by this court to ensure his appearance.

Because no condition or combination of conditions will reasonably ensure the safety of the public, or that the defendant will appear in Court to answer to the charges against him, the government moves pursuant to 18 U.S.C. § 3142(e) and (f) for pretrial detention of this defendant.

## I.   APPLICABLE LAW

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in determining whether a person should be released or detained.  These factors are:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2) the weight of the evidence against the person;

3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Here, the strength of the evidence against the defendant, his lack of regard for the safety of the community shown by his willingness to trade and use firearms, and the strong likelihood that he will face a substantial period of incarceration for the second time in his life, crimes, all favor detaining him until trial.

## II.    LEGAL ARGUMENT FOR DETENTION

In support of this motion, the government makes the following representations and proposed findings of fact:

### A. Probable Cause and the Evidence in this Case

1.      On August 15, 2024, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charged the defendant with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of trafficking in firearms, in violation of 18 U.S.C. § 933(a)(2).

2.      On August 15, 2024, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charged the defendant with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of trafficking in firearms – receiving, in violation of 18 U.S.C. § 933(a)(2).

3.      On September 29, 2023, officers with Philadelphia and Abington Police Departments executed a search warrant on the defendant's residence – 122 Delphine Street in Philadelphia.

4.      Present in the home when officers arrived were the defendant, minor children, and an adult woman.

5.      In the course of executing the search warrant, officers observed and recovered three loaded firearms in the defendant's bedroom. The three firearms are listed in the indictment.

6.      One of the firearms, a Taurus semi-automatic pistol, model PT140, 40 caliber S&W, serial number STG39534, loaded with nine rounds of .40 caliber ammunition, was recovered from next to the defendant's bed.

7.      Two firearms, a Glock, semi-automatic pistol, model 43X, serial number BPPP571 loaded with nine rounds of 9 mm ammunition, and a Taurus semi-automatic pistol, model PT111 G2, 9mm caliber, serial number TKM43046, loaded with 10 rounds of 9 mm ammunition, were recovered from a large hole in the drywall next to the defendant's closet in the bedroom. In other words, a hole had been cut in the wall, and the firearms were recovered from the floor in between the drywall and the brick foundation wall that supported the house.

8.      Law enforcement determined from the serial numbers of the three firearms that the firearms had been purchased in South Carolina by a different man and his wife.

9.      Law enforcement executed a search warrant on the defendant's phone. Law enforcement recovered text messages, pictures, and other evidence between the man in South Carolina and the defendant. The evidence showed that, at the defendant's request, on August 7, 2020, the man in South Carolina had purchased five Glock semi-automatic pistols, including the one recovered in the defendant's bedroom wall, in South Carolina for the defendant. The text

messages and pictures further show that the South Carolina man took pictures of the boxes that held the five Glocks and sent them to the defendant to confirm that is what the man was buying for the defendant. These pictures showed the serial numbers of the firearms. The text messages show that the defendant approved the purchase, and that the South Carolina man delivered the firearms to the defendant in Philadelphia.

10.     Records show that the defendant paid the man in South Carolina for the firearms.

11.     Of the five Glocks purchased for the defendant, one was recovered in his bedroom wall, and two have been recovered in crime scenes in Philadelphia.

12.     Law enforcement's investigation showed that the other two firearms that were recovered in the defendant's house (the Taurus semi-automatic pistols) were the South Carolina man's wife's firearms, and the South Carolina man sold them to the defendant. The man's wife had purchased the Taurus pistols on March 23, 2020, and the man sold them to the defendant later that year.

13.     The defendant is a felon who has been convicted of multiple crimes that each have terms of imprisonment exceeding one year. He is prohibited from possessing firearms. He is aware of those criminal convictions and aware that he is prohibited from possessing firearms because he signed guilty plea colloquies advising him of the prison sentences that he faced for the convictions.

### B.  Maximum penalties

The statutory maximum penalty for 18 U.S.C. § 922(g)(1), as set forth in 18 U.S.C. § 924(a)(8), is 15 years' imprisonment, 3 years of supervised release, a fine, a $100 special assessment, and forfeiture of the firearms.

The statutory maximum penalty for 18 U.S.C. § 933(a)(2), as set forth in 18 U.S.C. § 933(b), is 15 years' imprisonment, 3 years of supervised release, a fine, a $100 special assessment, and forfeiture of the firearms.

Thus, the defendant faces a maximum of 30 years' imprisonment, 3 years' supervised release, a $500,000 fine, a $200 special assessment, and forfeiture of the firearms and ammunition.

### C.  Criminal history

The defendant's criminal history is lengthy and serious. He is 44 years old and was first found responsible for a crime in 1996 at age 16 (simple assault, reckless endangering, theft by unlawful taking). Since then, he's continued with a life of crime.

The defendant has committed four drug- related crimes. In 1999, at age 18, he was convicted of intentional possession of a controlled substance. Notably, he was given a probation sentence for that conviction, which he violated and was sentenced to incarceration. Almost immediately upon being released from incarceration, he committed his first drug trafficking crimes (possession of a controlled substance with intent to deliver and conspiracy to do so) in 2002 at age 21. He was sentenced to one year imprisonment and two years of probation. He violated his probation sentence three times, and was sentenced to 60 days' confinement, and then 8 – 23 months' confinement and a year of probation, and then finally 6 – 23 months' confinement. His parole was revoked in 2007. While on probation, he committed his second drug trafficking crime (possession of a controlled substance with intent to deliver and conspiracy to do so) in 2002 at age 21. He was again sentenced to one year incarceration and two years of probation. That same year, before his sentencing, he committed his third drug trafficking crime (possession of a controlled substance with intent to deliver and conspiracy to do so) in 2002 at

age 21. He pleaded guilty and was sentenced to a county prison term (less than two years' incarceration).

The defendant's criminal activity extends beyond drug trafficking. In 2006 at age 25, he committed two attempted murders, one of which involved him shooting a pregnant woman who was a bystander to an argument, and illegally possessed a firearm in the process. He was sentenced to 5-10 years' incarceration for each of the attempted murder convictions, and 4.5 – 9 years' incarceration for the illegal firearm possession conviction. He served that sentence from 2007 – 2017. And notably, the defendant was also charged with relation against a witness, witness intimidation, terroristic threats, and obstruction of the administration of law related to the attempted murder charges. The victim reported that the defendant was reaching out to her from prison. Those charges were ultimately dismissed, which is not uncommon in witness intimidation cases.

The defendant was released and parole terminated in 2017. And though he may argue that his criminal convictions are stale, this argument is a red herring because the evidence of the crimes underlying the indictment shows that the defendant continues to be involved in criminal activity since at least 2020. Thus, whether his convictions could be considered stale is irrelevant because he is continuing to commit crimes. Additionally, the eight previous convictions serve to show that the defendant knows only a life of crime, and that is what he returned to after he was released from prison.

The evidence of the crimes underlying the indictment – the firearms themselves – was discovered in the defendant's home, next to his bed, and in the wall next to his closet. The evidence was also discovered in the defendant's phone, in his own words in text messages. Specifically, on July 16, 2020, the South Carolina man told the defendant that he was driving to

Philadelphia with a 9mm firearm and a 40 mm firearm for him (which are firearms consistent with the two Taurus pistols found in the defendant's bedroom), and the defendant responded "I want them all." About 20 minutes after the two met up and the defendant received the firearms, the South Carolina man texted the defendant asking him to clean the fingerprints off of the firearms, and the defendant replied, "I got u". Later, in August 2020, the defendant sent pictures of firearms that were on his bed to others, and two of the firearms appeared to be the two Taurus pistols. And regarding the Glock pistols that the defendant ordered, he told the South Carolina man on August 6, 2020 (the day before the purchase), ". . . see if u can get 5 glocks" and "Listen when u get them ima western union u the money a.S.A.P. . . . I will be patient and wait for u to bring them soon but soon as u get them I'm sending u the money[.]"

The defendant's criminal history, no matter how old, demonstrates that he is violent. Moreover, the argument that the criminal history is "old" or stale is irrelevant where the evidence in this case shows that he began committing crimes approximately three years after his release from prison.

### D.  Community Ties; Employment; Likelihood of Flight

Any ties that the defendant has to the community has not prevented him from disregarding the safety of the community and continuing to commit crimes. As a person who has contributed to the violence in this community by community two attempted murders and illegally possessing a firearm, the defendant is aware of the harm that firearms cause in Philadelphia. And now, he is contributing to that harm by bringing firearms here.

In the same vein, any concern the defendant may have for his wife or his children rings hollow where three loaded firearms were recovered in his bedroom (when they were also present), not locked up, and therefore available for anyone (including his children) to take by

mistake or accident or on purpose.[1] He has not shown regard for the community has a whole, or for his family.

His income reported to Pre-Trial Services shows that he has some means to leave Philadelphia. Though Pre-Trial Services noted that the defendant may return to live with his wife at 122 Delphine Street in Philadelphia, this is not a suitable living situation for at least two reasons. First, this is the very home where detectives recovered evidence of the crimes underlying the indictment. If he were to return there, he would be returned to the exact same circumstances and conditions that he previously lived in, which is fodder for him to return to the lifestyle of crime that he was engaging in. Second, the defendant's wife has stated that the defendant can live with him if released, but it appears that this situation is not stable or suitable. The defendant's wife filed a complaint with the Philadelphia police against the defendant in March 2023, where she stated that the defendant choked her. These circumstances are not appropriate for the defendant to return to pending the resolution of the charges he faces.

And finally, the fact that he is facing a significant federal prison sentence, and he has a demonstrated history of violating probation orders, indicates that he is unlikely to appear to answer for the charges against him.[2] All of this favors detaining the defendant.

## III.    CONCLUSION

---

[1] To the extent the defendant argues that he possessed these firearms for safety, this argument is not a defense, and it is meritless. First, the defendant has contributed to the danger and violence that exists in Philadelphia. Second, the defendant did not store these firearms in a way that suggests he was possessing them for self defense. Instead, he left them in a hole in a wall and on the ground near his bed, out in the open for anyone (including his children) to grab them by mistake or otherwise.

[2] Pre-Trial Services recommends that a condition of release include a prohibition on possessing firearms. However, the defendant already had that condition upon him by virtue of being a felon, and he flaunted it by possessing at least three firearms.

When all these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

The government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney

*/s Meghan A. Farley*
Meghan A. Farley
Special Assistant United States Attorney

Dated:  September 9, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA


**UNITED STATES OF AMERICA**          :

                              v.                              :          **CRIMINAL NO. 24-296**

**ADAIR JACKSON**                              :


## PRETRIAL DETENTION ORDER

AND NOW, this         day of September 2024, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention under Title 18, United States Code, Section 3142(e)(1) because:

      a.    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

      b.    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1

1.      There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 922(g)(1) (Count One) and Title 18, United States, Code, Section 933(a)(2) (Count Two).

2.      The evidence in this case is strong, and the likelihood of conviction is great.

3.      Law enforcement investigation establishes that in the Eastern District of Pennsylvania:

a.   on or about September 29, 2023, knowing he had previously been convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment for a term exceeding one year, the defendant knowingly possessed a firearm, that is, at least one of the following: a Glock, model 43x, 9mm semi-automatic pistol, bearing serial number BPPP571, loaded with nine rounds of 9mm ammunition; a Taurus, model PT-140, .40 caliber S&W semi-automatic pistol, bearing serial number STG39534, loaded with nine rounds of .40 caliber ammunition; and a Taurus, model G2, 9mm semi-automatic pistol, bearing serial number TKM43046, loaded with 10 rounds of 9mm ammunition, and the firearm was in and affecting interstate and foreign commerce; and

b.   from on or about March 2020 to on about September 2020, the defendant did receive from another person, in or otherwise affecting interstate or foreign commerce, a firearm, that is, at least one of the following: a Glock, model 43x, 9mm semi-automatic pistol, bearing serial number BPPP571; a Taurus,

model PT-140, .40 caliber S&W semi-automatic pistol, bearing serial number STG39534; a Taurus, model G2, 9mm semi-automatic pistol, bearing serial number TKM43046; and semi-automatic pistols, knowing or having reasonable cause to believe that such receipt would constitute a felony, or did attempt or conspire to do so.

4.      The total maximum penalty the defendant faces is 30 years' imprisonment, 3 years of supervised release, a fine of $500,000, and a $200 special assessment.

5.      The strength and nature of the case against the defendant, the substantial sentence the defendant faces if convicted establish that the defendant is a danger to the community and increase the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE CRAIG M. STRAW
*United States Magistrate Judge*

3

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that a true and correct copy of the Government's Motion for Pretrial Detention, and Proposed Order, was served by the Electronic Case Filing (ECF) system.


                                       */s Meghan A. Farley*
                                       Meghan A. Farley
                                       Special Assistant United States Attorney


Dated: September 9, 2024