IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　　　:

　　　　v.　　　　　　　　　　:　　　CRIMINAL NO. 24-296

ADAIR JACKSON　　　　　　　:

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Adair Jackson possessed three firearms when he was prohibited from doing so and stored them in his bedroom. Law enforced found these firearms when they executed a search warrant on his residence. The defendant had stored all three loaded firearms in his home, unsecured, where his young children were present. Law enforcement recovered one of these three firearms next to the defendant's bed and the other two from a large hole in the drywall next to the defendant's bedroom closet. The defendant obtained these firearms, and six more firearms, from a person he knew in South Carolina who he had enlisted to sell the firearms to him.

Time and time again, the defendant has shown that he refuses to live a law-abiding life, and instead, he has made a career out of committing crimes. Now 45 years old, the defendant has collected criminal convictions for four drug-related crimes (three of which are drug trafficking), attempted murder, illegal firearm possession, simple assault, recklessly endangering, and theft. These convictions, his two infractions at the Federal Detention Center, as well as his current criminal activity of possession of firearms as a convicted felon for which he is before this Court, demonstrate that the defendant is a danger to society and refuses to respect the law.

Pursuant to the plea agreement, at sentencing the government will move to dismiss Count Two of the indictment which charges the defendant with trafficking in firearms, 18 U.S.C. § 933.

For all of the reasons provided in this memorandum and consistent with the plea agreement, the government recommends a sentence of incarceration at the top of the advisory guideline range. The government anticipates that the guideline range will be 57-63 months, as stated in the Pre-Sentence Investigation Report. Thus, the government recommends a sentence of 63 months and three years of supervised release, absent any information or arguments addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, and how this supports a sentence of 63 months' imprisonment followed by three years of supervised release.

## I.    BACKGROUND

On September 8, 2025, the defendant pled guilty to possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). During his plea colloquy, the defendant admitted that he unlawfully possessed three loaded firearms on September 29, 2023, subsequent to sustaining at least one criminal conviction for a crime punishable by more than one year imprisonment.

The defendant admitted during his plea colloquy that those three firearms were recovered from his bedroom when police executed a search warrant on his residence. One of the firearms, a Taurus semi-automatic pistol, model PT140, 40 caliber S&W, serial number STG39534, loaded with nine rounds of .40 caliber ammunition, was recovered next to the defendant's bed. The other two firearms, a Glock, semi-automatic pistol, model 43X, serial number BPPP571 loaded with nine rounds of 9 mm ammunition, and a Taurus semi-automatic pistol, model PT111 G2, 9mm caliber, serial number TKM43046, loaded with 10 rounds of 9 mm ammunition, were recovered from a large hole in the drywall next to the defendant's closet in the bedroom. In other words, a hole had been cut in the wall, and the firearms were recovered from the floor in between the drywall and the brick foundation wall that supported the house.

The defendant further admitted that the three firearms had been purchased in South Carolina by two different individuals and sold to the defendant by one of those individuals, referred to in the Pre-Sentence Investigation Report as Person # 1. The evidence demonstrates

that the defendant also persuaded Person #1 to sell six additional firearms to him, for a total of nine firearms. The defendant paid Person #1 for all nine firearms the individual sold to him. As noted in the PSR, Person #1 pleaded guilty to charges in South Carolina relating to this conduct. (PSR ¶ 13, n. 2.)

II.    **SENTENCING CALCULATION**

A.    **Statutory Maximum Sentence.**

The maximum sentence that may be imposed on the defendant possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), as set forth in 18 U.S.C. § 924(a)(8), is 15 years' imprisonment, 3 years of supervised release, a fine, a $100 special assessment, and forfeiture of the firearm and ammunition may be ordered.

B.    **Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as follows: 51 to 63 months' incarceration. (PSR ¶ 87.) The calculation is based on a criminal history category II and a total offense level of 23. (PSR ¶¶ 29, 38.)

The parties agree with the Probation Office's determination that the defendant's criminal history category is II, which is based on three points that the defendant received for a 2007 convicted for attempted murder and prohibited possession of a firearm that he committed at age 25. (PSR ¶¶ 35 – 38.) Significantly, the defendant shot two people, including a pregnant woman. (PSR ¶ 35.) In 2007, the defendant was sentenced to 5 – 10 years' imprisonment and one year of probation. He was released on parole in 2014 and later that same year he violated parole. He was

released in 2017. (*Id*.)  This is the defendant's only criminal conviction that receives any criminal history points.

The defendant was convicted of two drug trafficking offenses that do not receive criminal history points because they are outside the 15-year lookback period to count toward a criminal history score. USSG § 4A1.2(e)(3). (PSR ¶¶ 32-33.) He committed both of these crimes in 2002 at age 21. The defendant was sentenced to one year of intermediate punishment and two years of probation for each respective offense. (PSR ¶¶ 32-33.) With respect to the first drug trafficking offense, which occurred on March 5, 2002, the defendant violated probation twice and violated parole once with respect to the first offense first offense. (PSR ¶ 32.) For those violations, he was first sentenced to 60 days imprisonment, then to 8 – 23 months' imprisonment and one year probation, and then to back time (6 – 23 months' imprisonment).[2]

The defendant's drug possession conviction, which occurred in 1999, also does not receive any criminal history points because of its age. (PSR ¶ 31.) He received 12 months of probation as a sentence. He violated that probation sentence and was sentenced to one year of imprisonment with immediate parole. He violated that parole sentence and was sentenced to back time. (PSR ¶ 31.)

As a juvenile, the defendant was convicted of simple assault, reckless endangerment, and theft as a juvenile. (PSR ¶ 30.) That conviction does not receive any criminal history points. (*Id*.)

---

[2] The defendant's sentence maxed out on March 27, 2008 and he was released. This dateis 15 years and 6 months from the date of the offense for which he is before this Court. In other words, his sentence is 6 months too old to count for criminal history points.

The defendant has a long history of arrests, nine in total, and each of those cases were dismissed, nolle prossed, quashed, or he was found not guilty. (PSR ¶¶ 41-49.)

The government agrees with the Probation Office's calculation of the defendant's total offense level of 23. (PSR ¶ 29.) There is no dispute that the base offense level is 22 due to one of the firearms having a large capacity magazine, and because the defendant's attempted murder conviction is a crime of violence. (PSR ¶ 22.) The defendant's drug trafficking convictions do not count toward increasing his base offense level because they are both outside the 15-year look back period.

The government agrees with the Probation Office's application of the specific offense characteristic under USSG § 2K2.1(b)(1)(B) for the number of firearms involved (nine), which results in a four-level increase. (PSR ¶ 21.) The defendant contends that only a two-level increase under USSG § 2K2.1(b)(1)(B) should be applied because the offense that the defendant pleaded guilty to, 18 U.S.C. § 922(g)(1), involved three firearms. However, the evidence shows and the defendant admitted during his plea colloquy that more than three firearms were involved.

As the Pre-Sentence Investigation Report points out, Person # 1 transferred nine firearms to the defendant. (PSR ¶ 13.) The defendant did not object to that fact. And as explained below and demonstrated through Exhibit A,[3] attached to this sentencing memorandum, nine firearms were purchased by the defendant from Person #1 during two separate transactions. The defendant comingled the firearms. They are intertwined and cannot be separate such that only three of them should be considered by the Court. The evidence shows that the firearms were comingled

---

[3] The name of Person #1, Person #1's phone number, and the defendant's phone number are redacted on the publicly-filed version of Exhibit A.

because some firearms from each transaction were recovered in the defendant's bedroom by law enforcement. Because they were comingled, the nine firearms cannot be separated from each other and some of them cannot be ignored for sentencing purposes. All of the nine firearms are included as relevant conduct under USSG § 1B1.3.

Despite all of this, the defendant maintains that these additional six firearms should be ignored, and instead he should only be responsible for the 3 firearms listed in the indictment. This suggestion is contrary to the evidence and to the Sentencing Guidelines. Under USSG § 1B1.3, the offense level calculation includes a determination of relevant conduct. Person # 1 transferred a total of nine firearms to the defendant (and purchased seven of those nine firearms for the defendant). The evidence, discussed in detail below show that by a preponderance of the evidence, that nine firearms were involved here.

USSG § 1B1.3 instructs that the offense level shall be determined based on, in part, "(A) all acts . . . committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme endeavor or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions . . . that occurred during the commission of the offense of conviction, [or] in preparation for that offense[.]" The defendant obtained nine firearms from Person # 1 in two different transactions (four in the first transaction and five in the second).

The evidence shows that the defendant persuaded Person # 1 to purchase firearms for him, he paid Person # 1 for them, and Person # 1 transferred the firearms to the defendant.  The evidence shows that this occurred in two transactions. The first transaction occurred in July 2020 when Person # 1 delivered four guns to the defendant: a Taurus, model PT-140, .40 caliber S&W

semi-automatic pistol, a Taurus, model G2, 9mm semi-automatic pistol, a Bersa, model Tinder 380, 380 ACP pistol, and a Hi-Point, model CJ380, 380 ACP pistol, to the defendant. Two of these firearms (the two Tauruses) were recovered from the defendant's bedroom when law enforcement executed the search warrant in September 2023. The evidence shows that the second transaction occurred in August 2020, when Person #1 purchased and delivered 5 Glocks to the defendant. One of these Glocks was recovered in the defendant's bedroom when law enforcement executed the search warrant in September 2023.

Law enforcement executed a search warrant on the defendant's phone. Text messages between the defendant and Person #1, attached to this Memorandum as Exhibit A, demonstrate the evidence of the nine firearms. For example, messages between Person # 1 and the defendant on July 16, 2020, show that Person #1 drove through Virginia on that date and met with the defendant. Person # 1 told the defendant what type of firearms he had ("I got 2 380's 9 and 40") and the defendant responded, "ok I see u when u get here be safe" and "I want them all." This is evidence of the first transaction in which Person #1 delivered four firearms to the defendant -- 380s references two of the firearms noted in footnote 6 of the PSR (a Bersa, model Tinder 380, and a Hi-Point, model CF380), the 9 references  another firearm noted in footnote 6 of the PSR (a Taurus, model G2 9mm), and a 40 references a fourth firearm in noted in the PSR (a Taurus, model PT-140 .40 caliber S&W).[4] The defendant also texted an address to Person #1, indicating that the two met. Later that day, Person #1 told the defendant, "Yo bro can you clean the prints off" to which the defendant responded, "I got u." This refers to the defendant wiping the

---

[4] In August 2020, the defendant sent a photo of two of these firearms to Person # 1. In one photo, a Taurus was strapped to the defendant's person. In another photo, firearms were displayed flat, seemingly laying on a bed. Person # 1 responded, "Damn bro" "Looks good!"

fingerprints off of the firearms. This accounts for four of the nine firearms Person # 1 gave to the defendant at his request.[5]

Exhibit A also shows text messages between Person #1 and the defendant on August 6, 7, and 8, 2020 and are evidence of the second transaction in which Person #1 purchased and transferred five Glocks to the defendant at the defendant's instruction. The messages show that the defendant wanted 5 Glocks, but would settle for a 45 ("And those cool but see if u can get 5 glocks if not get the five 45.") The defendant also told Person #1 he would still buy the Glocks from Person #1 even if the price was high ("I mean I'm still grabbing.") ATF Form 4473s show that Person #1 purchased 5 Glocks. Western Union records and text messages show the defendant paid Person # 1 through Western Union. The defendant told Person #1 that he transferred as much as he could through Western Union. That photo included Person #1's personal information, showing that the Western Union payment indeed was for Person #1. The defendant then sent Person #1 a photo of cash and told him he would give him the cash as the remainder of the payment ("All u it's 2 pass my limit I will give u the stack whenever u come up Monday".) The text messages leave no question that the Western Union and cash payment was

---

[5] The texts suggest that the defendant intended to sell these Glocks to someone else and at some other point had sold Glocks to someone else. On August 7, 2020, after Person # 1 sent the defendant a photo of the Glocks in their boxes, the defendant mistakenly sent a message to Person # 1 that read, "This how they comming [sic] last ones was used these rand new in a box" and then wrote, "South wrong text."

for the firearms. Indeed, Person # 1 thanked the defendant for the Western Union transfer, and the defendant responded, "No problem u doing me a favor." [6]

The evidence demonstrates that all 5 of the Glocks, as well as a Taurus, model PT-140 S&W, a Taurus, model G2 9mm, a Bersa, model Tinder 380, and a Hi-Point, model CF380, were transferred to the defendant by Person # 1.[7] This is undoubtedly relevant conduct to the offense to which the defendant is pleading guilty. For these reasons, the application of USSG § 2K2.1(b)(1)(B) is appropriate. (PSR ¶ 21.) A four-level increase should be applied to the base offense level. This results in an adjusted offense level of 26. (PSR ¶ 26.)[8]

Because the defendant accepted responsibility and timely pled guilty, the offense level is decreased by three. (PSR ¶¶ 27-28.) The total offense level is 23. (PSR ¶ 29.)

This results in a guideline range of 51-63 months incarceration. (PSR ¶ 87.)

III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

---

[6] The text messages show that the defendant continued to reach out to Person # 1 regarding purchasing firearms. For example, the defendant texted Person # 1 on September 3, 2020 telling him, ". . . whenever u do decide to cone [sic] back to this great city let me know I always need them" "And pay ahead of time". He sent Person # 1 a photo of a gun on October 4, 2020 and told him, "I like these joints homie if u can it wouldn't matter I will take brand new if u want" "Or if not whatever" "Some more 17 or 19". And November 10, 2020, he told Person # 1, "U know instead of me having a gun in every room I wanna have 2 in ever room lol But I'm serious".  He reminded Person # 1 that "Ok always and forever glocks and I will take them new" and he had a "special request golock 26 if u can".

[7] At the sentencing hearing, an investigator from ATF will testify to this evidence.

[8] The PSR correctly notes that the 2021 Sentencing Guidelines Manual applies and results in the inability to apply any enhancement relating to the evidence that suggests the

*continued . . .*

*Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

---

defendant trafficked firearms. (PSR ¶ 8, n. 1.) As the PSR points out, a firearms trafficking enhancement would have been applicable under the 2025 Sentencing Guidelines Manual. But that enhancement, and thus the 2025 Sentencing Guidelines Manual, cannot be applied to the defendant because that enhancement did not exist at the time of the defendant's conduct. The defendant's conduct does not meet the criteria for any firearms trafficking type of enhancement that exists in the 2021 Sentencing Guidelines Manual.

A.        **Consideration of the 3553(a) Factors Regarding Imprisonment.**

The defendant engaged in a serious offense. As a convicted felon, he was prohibited from possessing a firearm and instead of abiding by that law, he possessed the three firearms that he is charged with, and as discussed above, he bought six more from Person #1. He carelessly stored three firearms, loaded and unsecured, in his bedroom in his house where his young children were present. Two of the nine firearms that the defendant purchased were recovered in crime scenes. (PSR ¶ 13, n. 2.) The whereabouts of the other four firearms are unknown. (*Id.*) His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a sentence at the top of the guideline range.

The history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), also support a sentence at the top of the guideline range. The defendant's criminal history is serious and significant. Though he only receives three criminal history points, the Court should taken into consideration all of his criminal convictions in fashioning a sentence at the top of the guideline range. They demonstrate that he has absolutely no care for the community. He showed a willingness to use a gun when he shot two people in 2006. (PSR ¶ 35.) He showed no regard for others in the community when he possessed marijuana and crack cocaine with intent to distribute in 2002. (PSR ¶¶ 32-33.)

The defendant's responses to the sentences that he received for his drug trafficking convictions are worth highlighting because his behavior demonstrates much about his history and characteristics, and that he does not respect the court. The defendant was given a relatively lenient sentence for both of his drug trafficking convictions. However, the defendant did not value the mercy he was shown; nor did he abide by court restrictions. He violated probation

twice and violated parole once. He received stiffer prison sentences each time he violated, but this clearly did not deter him. While he was on probation for the first drug trafficking conviction, he committed the attempted murder in 2006. (PSR ¶ 35.) This shows that regardless of receiving a lenient or stiff sentence, and regardless of being on probation or parole, the defendant disrespects the court and the law.

The defendant's upbringing provides little insight into his life of crime. He was raised by his mother and stepfather and described that he was "very close" to his mother and had a "great" relationship with his stepfather. (PSR ¶ 52.) He reported that he had a "good" childhood, but despite "ha[ving] it good" at home, the "outside was calling [him]." (PSR ¶ 54.) Unfortunately, he was exposed to violence, drug dealing, and gang activity as early as age 14. It seems that the defendant had a supportive household and yet inexplicably made the choice to live a life of crime. There is nothing about his history or characteristics to suggest that a sentence lower than the top of the guidelines is appropriate.

The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense is strong here. 18 U.S.C. § 3553(a)(2). The defendant's criminal history, which shows repeated probation and parole violations, reveals that he does not respect the law and he has not changed his ways while incarcerated now. Indeed, he has had two disciplinary infractions while incarcerated at the FDC (fighting with another person and destroying property), which shows that he is continuing with his same ways while at the FDC. (PSR ¶ 10.) Nothing about the defendant's past actions show that he respects the law. This all supports a sentence at the top of the guideline range.

Because of the defendant's criminal history, the conduct here, and his infractions at the FDC, there is a serious need to afford adequate deterrence to criminal conduct, and to protect the

public from further crimes of the defendant. 18 U.S.C. § 3553(a)(3). Time and again, the defendant violated his probation and parole. And when he knew that he could not legally buy and possess firearms, he induced Person #1 to buy firearms for him. Though he told the Probation Office that he needed to protect his family, he did not purchase just one firearm (though that would have also been impermissible). (PSR ¶ 17.) He purchased nine. The statement that he wanted to protect his family is disingenuous considering he purchased nine firearms and stored them recklessly in his house, and considering he texted Person #1 on November 10, 2020 (about four months after he bought the nine firearms from him), "U know instead of me having a gun in every room I wanna have 2 in every room lol But I'm serious". There is a clear need to specifically deter the defendant from future criminal conduct, and to protect the public from him.

The sentencing guideline issues discussed above in Section II provide further reason that a sentence at the top of the guideline range is appropriate. 18 U.S.C. § 3553(a)(5-6). The defendant's criminal history and his conduct is serious. However, only one of his criminal convictions is within the time period to receive criminal history points. And despite inducing Person #1 to transfer firearms to the defendant (a prohibited person), the sentencing guidelines of 2021 do not account for that conduct, while the 2025 guidelines do. These are facts that distinguish the defendant's situation from other cases where a defendant commits the offense of possession of a firearm by a felon. Moreover, the defendant here possessed and pleaded guilty to three firearms, not one, and conduct relevant to the offense includes six additional firearms. Two of those firearms have been recovered in crime scenes. All of this provides justification for a sentencing at the top of the guideline range.

There is no identified need to provide the defendant with training, care, or treatment, as discussed in 18 U.S.C. § 3553(a)(4). Restitution is not an issue. 18 U.S.C. § 3553(a)(7).

- 14 -

To the extent that the defendant argues that he witnessed violence as a child, or he has to provide for and care for his family now, as a basis for a lower sentence, these arguments are not persuasive. To the extent the defendant witnessed violence, while unfortunate, does not warrant a reduced sentence. The defendant must be held responsible for his own actions, and he has proven as an adult to be a continual menace to public safety. And while this Court has authority to consider family circumstances as a basis for a reduced sentence, the facts do not warrant such leniency. Unfortunately, inconvenience and even harm to a criminal defendant's family are normal results of a criminal act, and ordinarily do not warrant leniency. Accordingly, as explained above, all the appropriate considerations of sentencing, such as the nature of the offense and the character of the offender, call for substantial incarceration in order to protect society from his otherwise persistent criminal conduct.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a sentence at the top of the guideline range. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B.    Supervised Release.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of

supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least three years is necessary. The defendant's criminal record alone demands this term of supervised release. His convictions are serious and show that he presents a danger to others. And despite these serious convictions and the prohibition on him against possessing firearms, he persuaded another person to sell firearms to him.  He neglected to store those firearms in a responsible manner, instead storing them loaded and unsecured in his bedroom, in the house where his small children were present. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a

defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as the conditions recommended by the Probation Office in the PSR.

## IV.   CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Meghan A. Farley*
MEGHAN A. FARLEY
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on counsel of record through the Electronic Case Filing (ECF) system.

/s/ Meghan A. Farley
MEGHAN A. FARLEY
Special Assistant United States Attorney

DATED: April 8, 2026